(No. 2869—

ANNIE L. WELLER, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed May 14, 1940.*

A. C. and BEN F. ANDERSON, for claimant.

JOHN E. CASSIDY, Attorney General; GLENN A. TREVOR, Assistant Attorney General, for respondent.

MR. JUSTICE LINSCOTT delivered the opinion of the court:

The complaint in this case was filed on March 25, 1936, and alleges that on the 28th day of September, 1935, the claimant was employed as a geography teacher by the Eastern Illinois State Teachers College at Charleston, being a

body politic and municipal corporation organized under an Act of the Legislature of the State of Illinois, entitled "An Act to establish and maintain the Eastern Illinois State Normal School," in force May 22, 1895; and all amendments thereto; that the said Teachers College under the Acts of the Legislature was and now is a municipal corporation, with power to sue and be sued, and was wholly supported and maintained from revenues received from the State of Illinois, the respondent herein.

It is further alleged that on the said 28th day of September, 1935, claimant was accidentally injured while in the performance of her duties, in the following manner: On that day she was conducting her class enrolled in said Teachers College on a field trip, and while so engaged she took her class to a place located about six miles south of Paris, Illinois, to examine the topography of that place for purposes of instruction of her students; that at said time and place and while so engaged she slipped and fell on a clay bank, and as a result of the fall she received a fracture of the joint of her left knee; that she was removed to the Oakwood Hospital in Charleston, Illinois, for treatment, and from that date until the 10th day of March, 1936, she was totally incapacitated from performing any duties pertaining to her employment, and during that time she was unable to teach her classes, and expended large sums of money to cure herself of her injuries.

It is also charged that said school is a political subdivision of the State of Illinois and has no income or revenue except that received from tuitions and that which is appropriated by the Legislature.

It is further charged that said Teachers College is engaged and was engaged at the time of the injury to the claimant in extra hazardous enterprises and businesses as a part of the operation of said school, in that sharp-edged cutting tools were used by said school in maintaining its said enterprise, and that the said school also maintains a power plant at said college wherein heavy machinery and boilers are used, and is also engaged in such a business and enterprise which are regulated by statutory regulations by the State of Illinois providing certain means and modes of the operation of the said machinery and appliances so used by the college.

Notice was alleged to have been given on the day of the accident or the next day following.

It is also charged that claimant has expended the sum of $1,054.45 on account of medical care, hospital care and attendance necessarily incurred for her cure, which amount has been paid by her.

It is further charged that claimant was permanently and completely disabled for a period of twenty-three weeks, being from the date she sustained her said injury until the 11th day of March, 1936, at which last date she resumed her employment with said Teachers College, but that her fractured knee had not completely recovered and she did not know whether or not it would be a complete recovery.

It is further charged that she was receiving the sum of $87.50 per week, and had been receiving a like sum during the preceding year, and that her annual earnings for one year prior to the accident exceeded $3,600.00.

Claimant charges that she never received any moneys for payment of her doctor and hospital bills paid by her, and that the only moneys that she received from the Teachers College is the sum of $262.50.

Claimant also alleges that she was advised by her counsel to file her claim before the Industrial Commission of the State of Illinois against the Eastern Illinois State Teachers College at Charleston, her employer, which claim was filed prior to the filing of this claim in this court.

Claimant further alleges that she is a single woman and has no dependents and that she is sixty-two years of age.

The undisputed facts are that she is a school teacher employed by the Eastern Illinois State Teachers College at Charleston, Illinois, and that she is the head of the geography department of that college and has been for many years last past. That the Eastern Illinois State Teachers College in Charleston, Illinois, is a school for the training of teachers and is supported and maintained by the State of Illinois, and that the claimant's salary is paid by the State of Illinois from an appropriation of the Legislature and is paid by the State Auditor. That the claimant's annual earnings for the year preceding the injury were $3,850.00. That on the 28th day of September, 1935, the claimant was employed as a teacher of the college, and that on that day, with the consent and approval of Robert G. Buzzard, President of the College, she

took her class on a field trip to a place south of Paris, Illinois, that being a part of her regular work as a part of the course which she was teaching. That on the trip two of her teachers were with her; the purpose of the trip being to observe the geological phenomena of the region. That they went to the place where the accident occurred in automobiles, and three of the students with Miss Ruby Harris, one of the teachers, went with the claimant in her car. That at the time of the accident the class was under the supervision of claimant. That at the time of the injury they were observing the rock areas and fossils, and the claimant was proceeding down a hill and slipped and received the injury. An X-ray was taken and claimant was taken to the Oakwood Hospital and remained there ten days, and was then taken to the Billings Hospital in Chicago. She was treated by Dr. N. C. Iknayan, her family physician, while in Charleston, and while in Chicago she was treated by Dr. Dragstadt, who is a bone specialist and bone surgeon. An operation was performed in Chicago upon her knee. She had a fracture of the left knee and the knee was cut open about nine inches, near the joint. Part of the cartilage was broken and it had gone in between the parts of the fracture and had to be removed. The bone was wired in place to hold it in position, and she was confined to her bed eight weeks in the Billings Hospital. Treatments were given her knee while at the hospital, under the advice and approval of her physician. She was in the hospital until the second week in January, 1936, approximately three and one-half months. She went back to Charleston the second week of January, 1936, in an automobile. Her knee at that time could not be bent more than ten degrees. She was under the care of her physician, Dr. N. C. Iknayan, upon her return. She used crutches, and used them after she resumed teaching at the school, her knee being then stiff and accompanied with pain. She used crutches until the last of May, 1936. She then used a cane, but could not walk a great distance. Claimant received pay for two full weeks and half pay for two weeks from the college, but has received no other compensation. She filed a claim with the Industrial Commission against the college, but the Attorney General ruled that the college was not liable for the claim. That on the trip she had with her a geological hammer (which was introduced in evidence), which is a sharp-edged tool; that it

is standard equipment for teaching geography and used in all geological work. She makes a claim for 25 per cent loss of the use of her leg for 47½ weeks compensation and $15.00 a week for 71½ weeks, making 24 weeks temporary total incapacity and 47½ weeks for 25 per cent use of her left leg, less the amount of $262.50 that she has been paid on account of the injury, the total amount claimed being $1,864.70. An award was allowed her before the Commission for this amount, less $19.75.

No dispute arises as to the nature and extent of claimant's injury. Dr. N. C. Iknayan testified that she had sustained a loss of 25 per cent of the use of her left leg, and no dispute arises as to that.

After reviewing all the evidence, the court finds that the accident arose out of and in the course of her employment. This court has jurisdiction of the subject matter and the parties. Due notice was given under the law and no question arises as to that. We hold the payments made to her constitute a waiver of the statutory notice.

The amount of compensation which shall be paid to an employee for an injury not resulting in death shall be: (a) The employer shall provide the necessary first aid, medical and surgical services, and all medical, surgical and hospital services thereafter; limited, however, to that which is reasonably required to cure or relieve from the effects of the injury.

The statute also provides that if the period of temporary total incapacity for work lasts more than six working days, compensation equal to fifty per centum of the earnings but not less than $7.50 nor more than $15.00 per week, beginning on the eighth day of such temporary total incapacity and continuing as long as the temporary total incapacity lasts, but not after the amount of compensation paid equals the amount which would have been payable as a death benefit under paragraph (a), Section 7, if the employee had died as a result of the injury at the time thereof, leaving heirs surviving as provided in said paragraph (a), Section 7: *Provided*, that in the case where the temporary total incapacity for work continues for a period of more than thirty days from the day of the injury, then compensation shall commence on the day after the injury.

Paragraph (e), 15, Section 8, provides that for the loss

of a leg, or the permanent and complete loss of its use, fifty per centum of the average weekly wage during one hundred and ninety weeks shall be paid.

The statute further provides: "For the permanent partial loss of use of a member or sight of an eye, but not including the hearing of an ear, fifty per centum of the average weekly wage during that proportion of the number of weeks in the foregoing schedule provided for the loss of such member or sight of an eye which the partial loss of use thereof bears to the total loss of use of such member or sight of eye."

Compensation shall be computed on the basis of the annual earnings which the injured person received as a salary, wages or earnings if in the employment of the same employer continuously during the year next preceding the injury. (Par. (a), Section 10, Workmen's Compensation Act.)

As a matter of precaution the claimant filed a claim for her injury both in the Court of Claims and with the Industrial Commission. The statute is plain that the Court of Claims is the proper forum for the adjudication of the claims of State employees under the Workmen's Compensation Act, and under the facts in this case we hold that the Eastern Illinois Teachers' College at Charleston, Illinois, is subject to the Workmen's Compensation Act.

Dr. Robert G. Buzzard, the president of the Eastern Illinois State Teachers' College, where the claimant was employed, and who was the immediate superior of the claimant, had notice of her accident the day following the same, as shown by the testimony and according to his report the claimant was paid for four weeks non-productive time, two at the full rate and two weeks at one-half the weekly rate, which payment constitutes a waiver of a demand for compensation within six months, but the claimant did, in addition thereto, make a demand within six months at the office of the Attorney General. The claim was filed within a year, so no question of jurisdiction arises in this case.

Under the statute, Fifteen Dollars ($15.00) per week is the maximum amount of compensation that she can be allowed. The period of temporary total disability was twenty-three and one-half weeks. In the original complaint twenty-three weeks was averred, and in Claimant's Statement, Brief and Argument it is claimed that twenty-four weeks was the amount of time. One Hundred and Ninety weeks (190) is the

period of time during which compensation is paid for the total and permanent loss of use of a leg. The evidence shows that she has suffered a twenty-five per cent loss of the use of her left leg. On the basis of Fifteen Dollars ($15.00) per week, which is the maximum for an employee having the status of this claimant for one-fourth of one hundred and ninety weeks (190), or forty-seven and five-tenths (47.5/10), the compensation would amount to Seven Hundred Twelve Dollars and Fifty Cents ($712.50). The record also shows that ''she may be better or she may be worse, but she will probably be better.'' This statement was made by her physician. The arbitrator did find a twenty-five per cent (25%) disability of the claimant's left leg. As to the doctor and hospital bills, there seems to be no question but that claimant is entitled to One Thousand Fifty-four Dollars and Forty-five Cents ($1,054.45).

We, therefore, fix the amount of the award to be made as follows: Seventy-one (71) weeks compensation at Fifteen Dollars ($15.00) per week, to wit: One Thousand Sixty-five Dollars ($1,065.00) plus medical and hospital services, One Thousand Fifty-four Dollars and Forty-five Cents ($1,054.45) less Two Hundred Sixty-two Dollars and Fifty Cents ($262.50) heretofore paid, or a net award of One Thousand Eight Hundred Fifty-six Dollars and Ninety-five Cents ($1,856.95), all of which has accrued and is now payable.

This award being subject to the provisions of an Act entitled ''An Act making an Appropriation to Pay Compensation Claims of State Employees and providing for the Method of Payment Thereof'' (Illinois Revised Statutes, 1939, Bar Association Edition, Chapter 127, Pars. 180-181), and being subject also to the terms of an Act entitled ''An Act making Appropriations to the Auditor of Public Accounts for the Disbursement of Certain Monies until the Expiration of the First Fiscal Quarer after the Adjournment of the next Regular Session of the General Assembly,'' approved July 1, 1939 (Session Laws 1939, page 117); and being, by the terms of the first mentioned Act, subject to the approval of the Governor, is hereby, if and when approval is given, made payable from the appropriation from the General Fund in the manner provided by the foregoing Acts.